IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOWARD COHEN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 10-514 |
| CHLN, INC., et al | . | |

## MEMORANDUM AND ORDER

**JACOB P. HART**
**UNITED STATES MAGISTRATE JUDGE**               February 8, 2012

INTRODUCTION

Plaintiff Howard Cohen brought this action against Defendant CHN, Inc and Mark Hinds after he was fired as the General Manager at the Chart House in Philadelphia. His employment was terminated after he had informed his employer that he would be having back surgery. Plaintiff asserts claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C. 2601 et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P. Stat. 951 et seq. Defendants contend that Plaintiff was terminated for poor performance and that although he was actually fired after he informed them of his surgery, the decision to fire him had already been made.

Presently before this court is Defendant's Motion seeking to amend their pre-trial memorandum to include an additional witness. Defendants seek to add Jim Sargood, Plaintiff's subsequent employer, as a witness.

At Plaintiff's deposition, he testified that after being fired by the defendant, he was employed by Pagelli's until October 15, 2010. His Pagelli's salary was $65,000 per year. When asked why he left that job, he testified that the restaurant was experiencing some financial problems. (Tr. At 146). Defendant claims that on or about September 16, 2011, they contacted

Pagelli's and spoke to Mr. Sargood, who informed them that Plaintiff was fired because of poor performance and not because of financial problems. On October 21, 2011, Defendant produced a Declaration from Mr. Sarwood and a paper from Plaintiff's employment file with Pagelli's to Plaintiff's counsel. On December 23, 2011, Defendants served Plaintiff with a Notice for the Trial Deposition of Jim Sargood to be conducted on January 3, 2012 in New Port Richey, Florida. Defendant also advised Plaintiff at that time that they intended to seek to amend Defendants' Pre-Trial Memorandum to include Mr. Sargood as a trial witness. Plaintiff responded with a letter advising Defendant that he objected to the deposition. Although Plaintiff's counsel objected on the record, the deposition was conducted on January 3, 2012 and Plaintiff's counsel participated by telephone.

According to Plaintiff's counsel, he made a request to conduct a discovery deposition which was not honored and he has not received the court reporter's contact information. He also states that although he has requested a copy of the deposition transcript from Defendant's counsel, he has not received one. (Declaration of Thomas More Holland- Exhibit B to Plaintiff's Reply). In response, Defense counsel claims that Plaintiff never sought a discovery deposition. They have also attached a copy of the deposition transcript to their reply.

DISCUSSION

The parties are in agreement as to the criteria the court is to consider in exercising its discretion for permitting an untimely amendment of a Pre-Trial Memorandum. The criteria to be considered are: "(1) prejudice or surprise in fact to the nonmoving party, (2) the ability of that party to cure the prejudice, (3) the extent to which the waiver of the rule would disrupt the orderly and efficient trial of the case, and (4) bad faith or willfulness on part of the movant.." Joy

Manufacturing Co. v. Sola Basic Industries, Inc., 697 F.2d 104, 109 (3d Cir. 1982). Considering this criteria, we do not find that the Plaintiff would be unfairly prejudiced or that the trial would be delayed as a result of the addition of the witness. The Defendants' desire to add the witness only came about as a result of Plaintiff's lie at his deposition. Plaintiff was aware of the witness and was previously notified that the Defendant would be moving to add the witness. Furthermore, Plaintiff's counsel participated in the trial deposition and extensively questioned Mr. Sargood. Therefore, applying the criteria, we find that Defendant would be permitted to amend the pre-trial statement.

However, as Plaintiff briefly argues, Mr. Sargood's testimony is simply not relevant. In fact, if the Pagelli's salary of $65,000 is used to mitigate damages, rather than the zero amount Plaintiff earned before acquiring his next job (job C), or the $60,000 he earns at job C, it would not even be relevant that Plaintiff no longer works at Pagelli's (job B). The only relevance that Mr. Sargood's testimony would have would be to Plaintiff's credibility. However, we find pursuant to Federal Rule of Evidence 403, that any probative value the testimony could have is far outweighed by the danger of unfair prejudice that may be caused by Defendant attempting to demonstrate that Plaintiff was fired from Pagelli's for the same reason that Defendant fired him.[1]

Defendant argues in their reply to Plaintiff's response that Mr. Sargood's testimony is relevant not only as to credibility, but also to the issue of damages. We disagree. Plaintiff cites Johnson v. Spencer Press of Maine, Inc, 364 F.3d 368, 381-82 (1st Cir. 2004), for the proposition

---

[1]. By admitting the testimony, we would also be cluttering the trial with a case within a case, since Plaintiff would then be entitled to litigate exactly why he was fired by Pagelli's, to show that it was not the same reason he was fired by CHLN.

that due to his failure to mitigate, backpay stops when a plaintiff is fired from a second job. However, in that case, the circuit court reversed the district court's holding that after being fired from a replacement job the Plaintiff was completely barred from receiving any further backpay. The circuit court held that after the Plaintiff was fired from the replacement job, "he was no longer mitigating his damages, as was required[, b]ut that did not mean that the possibility of backpay was permanently cut off." Id. at 381. The court held that it was "error to cut off, as a matter of law, the ability of a successful Title VII plaintiff to receive further back pay or front pay once he is fired for misconduct from the position he takes after leaving the discriminatory employer." Id. at 373.

Plaintiff also cites a Fourth Circuit case, Brady v. Thurston Motor Lines Inc., 753 F.2d 1269 (4th Cir. 1985), which held that an employer was not entitled to receive backpay after being fired from a replacement job. The court in Brady found that by violating the subsequent employer's rules and being fired, the plaintiff had effectively removed himself from the job market and was failing to mitigate damages. The court held that as a result of this discharge the plaintiff was not entitled to any backpay after being discharged from the replacement job (job B) until the time that he was again reemployed (job C). The Brady court relied upon the Supreme Court's holding in Ford Motor Co.v. Equal Employment Opportunity Commission, 458 U.S. 219, 102 S.Ct. 3057 (1982), and found that the plaintiff's failure to exercise reasonable diligence by maintaining the interim employment was a failure to mitigate damages and precluded the award of backpay after the termination. Id. at 1277.

The Third Circuit has specifically rejected the "no mitigation-no backpay" argument, finding that backpay is not cut off as a result of a plaintiff's failure to mitigate damages. Booker

4

v. Taylor Milk Co. Inc., 64 F.3d 860 (3d Cir. 1995). The Third Circuit held that the "no mitigation- no backpay" argument is entirely inconsistent with the purpose underlying Title VII and the reasons for awarding backpay, restoring the plaintiff to the economic position he would have enjoyed absent the discrimination. Id. at 866. The Third Circuit also addressed the Supreme Court's ruling in Ford Motor Co.. The court noted that the issue in that case was "whether an employer charged with discrimination in hiring can toll the continuing accrual of backpay liability under...Title VII simply by unconditionally offering the claimant the job previously denied, or whether the employer also must offer seniority retroactive to the date of the alleged discrimination. Under that situation, a plaintiff can entirely, or nearly, mitigate any loss by accepting the job once denied, and further, that rule satisfies Title VII's second goal- to end unlawful discrimination." Booker, 64 F.3d at 867; see also Stager v. Beverly Health and Rehabilitation Services, Inc., civ. A. No. 3:2006-101, 2008 WL 3165837 (W.D. Pa. 2008) (The Supreme Court's holding in Ford Motor Co, "when read in context, clearly refers to the forfeiture of only the *amount* of one's backpay that could have been offset by reasonable attempts to mitigate damages.")

The Court in Ford Motor Co,. was addressing the fact that an employer may toll backpay by offering the plaintiff the same job that he was denied. Id., citing Ford Motor Co. at 232. Clearly, where the plaintiff refuses the same job that he was denied, the backpay would be reduced to zero. However, in the instant case, Plaintiff's voluntary forfeiture or being fired from a replacement job paying less than the job from which he allegedly was terminated as a result of discrimination, would not reduce that number to zero. Awards of backpay are to be offset by "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons

5

discriminated against" 42 U.S.C.§ 2000e-5 (g)(1). Had Plaintiff exercised reasonable diligence in keeping his job at Pagelli's (job B), Defendant could only argue that he would have continued earning $65,000 per year. See Johnson, 364 F.3d at 382 ("Had there been no discrimination at employer A, the employee would never have come to work (or have been fired) from employer B. The discriminating employer (employer A) should not benefit from the windfall of not paying the salary differential when the employee is re-employed by employer C.")

We reject the argument that the backpay should be cut off or even temporarily tolled as a result of Plaintiff being fired for cause from his replacement job. Rather, keeping the offset amount for any backpay award at $65,000, the amount he would have continued to earn had he exercised reasonable diligence in not being fired, is consistent with the purpose of backpay. Both the Ninth Circuit and Eighth Circuit have found that the backpay should remain unchanged where a Plaintiff is terminated from or without justification quits a replacement job. See Knickerbocker Plastic Co., 132 N.L.R.B. 1209, 1215 (1961)[2] (as a result of such quitting claimants shall be deemed to have earned for the remainder of the period for which each is awarded backpay the hourly wage being earned at the time such quitting occurred); NLRB v. Hopcroft Art & Stained Glass Works, Inc., 692 F.2d 63, 65 (8th Cir. 1982). We agree that logically, leaving the backpay award unchanged after the employee is fired for cause would put

---

[2]We note that the Johnson court held that the cases finding that backpay should be temporarily tolled after an employee is fired for misconduct in the course of mitigating damages relied at least in part on the NLRB's rule on the issue in Knickerbocker Plastic Co., 132 N.L.R.B. 1209, 1215, 1961 WL 15694 (1961). See Johnson, 364 F.3d at 382. However, in that case, the bavckpay was tolled during that period because the job from which the plaintiffs were fired paid the same salary as did the job from which the plaintiffs were fired as a result of discrimination. Knickerbocker, 132 N.L.R.B. at 1214. (noting that the wages paid at the jobs from which the employees quit were at least comparable to those paid by the Respondent). Therefore, this kept the defendants in the same position as if the plaintiffs were not terminated.

the employee in the position that he would have been in had he exercised reasonable diligence in never being fired from the replacement job. See Johnson, 364 F.3d at 383.

Therefore, we will not allow Defendant to introduce evidence regarding Plaintiff's termination from his job at Pagelli's, in an attempt to reduce any award of backpay. However, if Plaintiff makes the testimony relevant, we will then allow the Defendant to introduce Mr. Sargood's testimony. Plaintiff notes in his memorandum in opposition to Defendant's motion that "65,000 mitigation exists from April 2010 into the future", making the identification of a witness related to the termination of that job irrelevant. However, in Plaintiff's pre-trial memorandum, he sets forth three wage loss rates. He correctly uses the $103,000 salary Plaintiff received while employed by Defendant and then the $65,000 salary he received for the next job he obtained. However, Plaintiff also then uses the $60,000 salary that plaintiff received for the following job. (Pre-trial Memorandum at p. 8). In the event that Plaintiff intends to introduce the lower $60,000 salary, or the fact that he lost his job at Pagelli's, the reasoning for the termination of Plaintiff's job at Pagelli's (job B) would become relevant.

We therefore, enter the following: